**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION**

SCOTT SANDERS, an individual,

Plaintiff,

v.

FIDELITY MORTGAGE COMPANY, et al.

Defendants.

Case No. C 05-4990 MEJ

JOINT CASE MANAGEMENT STATEMENT AND ~~[PROPOSED]~~ CASE MANAGEMENT ORDER

Plaintiff Scott Sanders ("Sanders") and defendants Fidelity Mortgage Company ("Fidelity"), Pacific Home Brokers ("Pacific"), Bert Coker ("Coker"), Long Beach Mortgage Company ("LBMC") and Washington Mutual Bank ("WAMU") submit this Joint Case Management Statement and Proposed Case Management Order and request the Court to adopt it as the Case Management Order in this case pursuant to Federal Rule of Civil Procedure 16 and Civil L.R. 16-10(b).

**JOINT CASE MANAGEMENT STATEMENT**

Description of the Case:

1. Plaintiff's Contentions:

This case and the two related cases of *Whitworth v. Fidelity Mortgage Co.* C-05 4725 MEJ and *Garcia v. Fidelity Mortgage Co.* C-05 5144 MEJ involve a real estate and home loan "bait and switch" scheme involving defendants Joel Atwater and Scott Tucker, unlicensed real

estate agents, who were employed by the mortgage brokerage firm of defendant, Fidelity, and the real estate brokerage firm of defendant, Pacific. Each of these entities is owned and operated by real estate broker defendant, Coker. These defendants induced the plaintiffs to purchase a home based on misrepresentations as to the monthly costs of owning the home, the costs and fees associated with the loan, and further induced them to go forward with the purchase by promising to refinance the home in a few months, without further charge, to reduce the monthly payments to the amount originally promised.

There were serious misrepresentations in making the loans on these homes, including; in the loan transaction including forged notarizations, falsification of income and assets, lack of or improper statutorily mandated disclosures and charges for services not performed, which the lenders, defendants LBMC and WAMU were responsible for or which they knew or should have known of.

At the time the transaction closed, the terms of the loans were substantially higher but Sanders was assured that defendants would refinance it at no charge and substantially reduce the monthly payments. As a result the house was purchased and defendants Fidelity, Pacific, Coker, Atwater and Tucker made in excess of $25,000. The loans were never refinanced. Sanders has tried to refinance the loans to reduce his monthly obligations, but has been unable to do so. Sanders cannot continue to make the mortgage payments and stands to lose the house.

Sanders has alleged violations of the federal Real Estate Settlement Procedures Act (12 USC §2600), violations of California's False Advertising and Unfair Business Practices statutes (Bus. & Prof. Code §§ 17200, 17500), the Consumer Legal Remedies Act (Civ. Code §1750) and common law claims for fraud, breach of fiduciary duty and negligence and declaratory relief. Plaintiff seeks rescission and restitution with respect to the loan and disgorgement of moneys received as well as compensatory and punitive damages and attorney fees.

2. <u>Defendants Fidelity's, Pacific's and Coker's Contentions</u>:

These defendants contend that they acted properly as a loan brokerage in this and the companion cases and allowed and permitted the purchasers to qualify for loans and enter the real estate market and that in each and every case the property purchased have appreciated in value. These defendants do not think it is likely or possible that any of the purchasers were misled in any way as to any material facts because of the exhaustive nature of the loan documents and the necessity of the borrowers qualifying directly with the bank and lenders and giving full and complete and truthful information.

These defendants claim that none of these borrowers have attempted to mitigate their damages by selling, refinancing or otherwise simply taking their appreciation, and that if the loan documents were all produced it would show that they knew exactly what the terms of their loans were.

3. Defendants LBMC's and WAMU's Description of the Case:

This lawsuit against defendants LBMC and WAMU is based on plaintiff's misunderstanding of the role of LBMC in a "stated income" loan transaction and the nature of a "stated income" loan.

LBMC was and is a lender that makes wholesale loans exclusively through mortgage brokers, who are not LBMC's employees or agents. LBMC does not interact directly with any borrower and did not interact with plaintiff.

In the loan transaction at issue, plaintiff was assisted by his mortgage broker, Fidelity. The general role of a mortgage broker is to prequalify the borrower, obtain relevant financial information and documentation from the borrower, disclose truthful information to the borrower, prepare and submit a loan package for the borrower (that contains the loan application and all required supporting documentation) to the various lenders to secure the most advantageous loan for the borrower and itself. Such functions are commonplace and standard industry practice for a mortgage broker. In exchange for these services, it is also standard industry practice for a borrower to pay the mortgage broker a fee.

Where a mortgage broker such as Fidelity presents a loan to LBMC that has an interest rate in excess of the rate for a par loan, it is LBMC's practice to compensate the mortgage broker. One method of compensation is to pay a yield spread premium. In the loan transaction involving plaintiff, LBMC paid a yield spread premium to Fidelity outside of escrow, which was disclosed in the statement of estimated closing costs and in the final HUD-1. LBMC's payment of a yield spread premium to Fidelity was and is consistent with LBMC's standard practice and the generally accepted practice of other lenders in the mortgage lending industry. Thus, LBMC's payment of a yield spread premium to Fidelity was not duplicative of the fee paid by plaintiff and was not a kickback or unearned fee.

Plaintiff applied for a loan from LBMC on a "stated income" basis. A "stated income" loan calls for a borrower to state his income on the loan application but requires little supporting documentation of income. LBMC processed and underwrote the loans made to plaintiff pursuant to its normal operating guidelines for "stated income" loans. LBMC's practice regarding "stated income" loans was and is consistent with the generally accepted practice of other lenders in the industry that make "stated income" loans.

LBMC did not review the mortgage broker's file nor was it standard industry practice to do so. (Having the right to do so is far different from the obligation to do so.) Indeed, imposing the condition of review would nullify the benefit to the lender of using mortgage brokers in the matter of loans and greatly increase the cost of the loan, which ultimately is paid by the borrower.

Defendant WAMU services the loans that LBMC made to plaintiff.

At all relevant times, defendants Fidelity, Pacific, First California Title, Bert Coker, Joel Atwater, and Michele Roberts were not LBMC's agents and were not authorized to act on behalf of LBMC.

4. <u>The principal factual issues which the parties dispute</u>:

Apart from the contentions set forth above, LBMC and WAMU sets forth the following factual issues in dispute:

a. Whether defendants Fidelity, Pacific, Coker, Atwater, Roberts or First California Title were agents of LBMC for the purposes of the loans made to plaintiff;

b. Whether plaintiff received all disclosures required by TILA and RESPA in connection with the mortgage loans obtained from LBMC;

c. Whether LBMC made any misrepresentations to plaintiff regarding its loans (including in any advertising);

5. <u>The principal legal issues which the parties dispute</u>:

Apart from the contentions set forth above, LBMC and WAMU sets forth the following legal issues in dispute:

a. Whether LBMC and WAMU violated TILA;

b Whether defendants LBMC and WAMU violated RESPA;

c Whether defendants LBMC and WAMU violated the California Business and Professions Code sections 17200 and 17500 *et seq.*, thereby entitling the plaintiff to the remedies of equitable restitution and disgorgement of profits;

d. Whether defendants LBMC and WAMU violated the California Civil Code section 1750 *et seq.*;

e. Whether defendants LBMC and WAMU are liable for negligent training;

f. Whether defendants LBMC and WAMU are liable for negligent supervision;

6. <u>Other issues</u>:

The parties are not aware of any issues related to service, venue or jurisdiction.

7. <u>The following parties have been served but not yet appeared</u>:

First California Title, Joel Atwater, and Michele Roberts. Counsel for plaintiff has been in touch with each of these defendants and it appears they all will appear in pro per except First California Title.

8. <u>Additional parties</u>:

None known at this time.

9. <u>Consent to Magistrate Judge for Trial</u>:

All parties to this Joint Case Management Conference Statement have or will consent to Magistrate Elena James.

10. Alternative Dispute Resolution:

The parties have discussed and have agreed to go to mediation before undertaking any discovery other than the exchange of Initial Disclosures on May 16, 2006. The parties request that the court ADR process hold a telephone conference with all parties (including those who will appear after the filing of this Joint Case Management Statement) to discuss mediation and potential dates for mediation in the months of June, July, or August, 2006. The parties further request that the court continue the Case Management Conference until August 31, 2006 or any day thereafter that is convenient for the court.

10. Discovery and Trial Proceedings:

Given that not all named parties have appeared in the case, the parties have agreed that if the case is not resolved at mediation, all parties shall meet and confer regarding discovery and pretrial issues and file an updated Joint Case Management Statement prior to the next Case Management Conference.

Dated: 5/2/06

LAW OFFICES OF ROBERT F. KANE

By ____________________
ROBERT F. KANE
Attorneys for Plaintiff
SCOTT R. SANDERS

Dated: May ___, 2006

MUSICK, PEELER & GARRETT, LLP

BY ____________________
CATHERINE M LEE
Attorneys for Defendants
LONG BEACH MORTGAGE COMPANY and
WASHINGTON MUTUAL BANK

All parties to this Joint Case Management Conference Statement have or will consent to Magistrate Elena James.

10. Alternative Dispute Resolution:

The parties have discussed and have agreed to go to mediation before undertaking any discovery other than the exchange of Initial Disclosures on May 16, 2006. The parties request that the court ADR process hold a telephone conference with all parties (including those who will appear after the filing of this Joint Case Management Statement) to discuss mediation and potential dates for mediation in the months of June, July, or August, 2006. The parties further request that the court continue the Case Management Conference until August 31, 2006 or any day thereafter that is convenient for the court.

10. Discovery and Trial Proceedings:

Given that not all named parties have appeared in the case, the parties have agreed that if the case is not resolved at mediation, all parties shall meet and confer regarding discovery and pretrial issues and file an updated Joint Case Management Statement prior to the next Case Management Conference.

Dated:

LAW OFFICES OF ROBERT F. KANE

By__________________________
ROBERT F. KANE
Attorneys for Plaintiff
SCOTT R. SANDERS

Dated: May 2, 2006

MUSICK, PEELER & GARRETT, LLP

BY__________________________
CATHERINE M LEE
Attorneys for Defendants
LONG BEACH MORTGAGE COMPANY and
WASHINGTON MUTUAL BANK

Dated: 05/02/06

LAW OFFICES OF GOFORTH & LUCAS

BY
CHRISTOPHER R. LUCAS
Attorneys for Defendants
FIDELITY MORTGAGE COMPANY,
PACIFIC HOME BROKERS and BERT COKER

~~[PROPOSED]~~ CASE MANAGEMENT ORDER

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for this case and the parties are ordered to comply with this order. In addition, the Court Orders:

- ☐ The parties shall complete mediation by August 31, 2006.
- ☐ The Case Management Conference shall be continued to August 31, 2006. The parties shall file and serve an updated Joint Case Management Conference Statement by August 24, 2006.

The Case Management Conference shall be heard on August 31, 2006, at 10:00 a.m.

Dated: May 9, 2006

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

Judge Maria-Elena James

MAGISTRATE ELENA JAMES
UNITED STATES DISTRICT COURT