1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT R. SANDERS,

          Plaintiff,

   v.

FIDELITY MORTGAGE COMPANY, et al.,

          Defendants.

_____/

No. C 05-04990 MHP

**MEMORANDUM & ORDER**

**Re: Motion for Default Judgment**

      Plaintiff Scott R. Sanders ("Sanders" or "plaintiff") filed this action against defendant companies Fidelity Mortgage Company ("Fidelity"), Pacific Home Brokers ("Pacific"), Long Beach Mortgage Company, Washington Mutual and First California Title and individual defendants Bert Coker ("Coker"), Joel Atwater ("Atwater"), Michele Roberts and Does 1 through 50 (collectively, "defendants"), alleging violations of the federal Truth in Lending Act ("TILA"), the federal Real Estate Settlement Procedures Act ("RESPA"), California's Consumer Legal Remedies Act ("CLRA"), California's Business and Professions Code, fraud, breach of fiduciary duty, negligence, negligent training and supervision, negligence of notary public and sureties, and infliction of emotional distress. Now before the court is plaintiff's motion for default judgment against defendant Atwater. Having considered the arguments and submissions of the parties, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

      Plaintiff's claims arise out of an alleged "bait and switch" scheme in which defendants promised plaintiff that they would help plaintiff secure a home loan with certain terms and conditions, but in reality induced plaintiff to sign a loan contract with significantly less favorable

**United States District Court**
For the Northern District of California

1  terms and conditions.  Compl., Docket No. 1, ¶ 1.  In October 2004, plaintiff met defendant Atwater,

2  who represented that he could make all of the necessary arrangements to help plaintiff purchase his

3  first home.  Id. ¶ 24.  Plaintiff asserts that Atwater said he worked for defendant Coker, a licensed

4  real estate broker who owned and operated Fidelity, a mortgage loan business, and Pacific, a real

5  estate brokerage business.  Id. ¶ 12; Sanders Dec., Docket No. 113, ¶ 5.  However, unbeknownst to

6  plaintiff, Atwater was not licensed to sell real property or originate home loans.  Compl. ¶ 15.  After

7  plaintiff agreed for Atwater to help him find a home, Atwater filled out a loan application for

8  plaintiff and subsequently informed plaintiff that he had been pre-approved for a $425,000 loan.  Id.

9  ¶ 25.  Atwater showed plaintiff a house in Oakley, California, which Atwater said would only cost

10  plaintiff $1250 per month, and Atwater also told plaintiff he would secure a loan with no

11  prepayment penalty.  Id. at ¶¶ 25 & 29; Sanders Dec. ¶ 8.  Based on Atwater's representations,

12  plaintiff made an offer on the house which was subsequently accepted.  Compl. ¶ 27.

13  Once the offer was accepted, Atwater prepared a loan application on plaintiff's behalf, in

14  which Atwater inflated plaintiff's income and falsely represented that plaintiff had a Wells Fargo

15  account containing $10,000.  Id. ¶ 28.  When plaintiff met Atwater to sign the loan papers, plaintiff

16  learned that the promised loan had not yet been approved, and that to close the transaction plaintiff

17  needed to sign loan papers with a higher $1908 monthly payment.  Id. ¶ 30. Atwater assured plaintiff

18  that this was only a temporary arrangement and that the monthly payments would be reduced to the

19  promised $1250 amount.  Id.; Sanders Dec. ¶ 11.  Soon after moving into the house, however,

20  plaintiff received a bill for a second mortgage, in the amount of $687.33, creating a total monthly

21  payment for plaintiff in the amount of $2592.33.  Compl. ¶ 31; Sanders Dec. ¶ 14.  Meanwhile, the

22  promised loan was not approved.  Compl. ¶ 34.  Atwater promised plaintiff that he would refinance

23  the loans into one consolidated loan that would reduce the monthly payments by 50%, at no cost to

24  plaintiff, but Atwater never did so.  Id. ¶¶ 34-35.  Ultimately, plaintiff was unable to refinance the

25  loan, and by June 2007 plaintiff was unable to make the monthly mortgage payments.  Id. ¶ 35;

26  Sanders Dec. ¶ 18.  Plaintiff vacated the house in July 2008.  Sanders Dec. ¶ 19.

27  Plaintiff filed this action against defendants on December 2, 2005, alleging the following

28  causes of action against some or all defendants: (1) violation of TILA, 15 U.S.C. section 1601 et

2

**United States District Court**
For the Northern District of California

1    <u>seq.</u>; (2) violation of RESPA, 12 U.S.C. section 2601 <u>et seq.</u>; (3) unlawful, fraudulent, and unfair

2    business practices under California's Business and Professions Code section 17200 <u>et seq.</u>; (4) false

3    advertising under California's Business and Professions Code section 17500 <u>et seq.</u>; (5) violation of

4    CLRA, California Civil Code section 1750 <u>et seq.</u>; (6) fraud; (7) breach of fiduciary duty; (8)

5    negligence; (9) negligent training; (10) negligent supervision; (11) negligence of notary public and

6    sureties; and (12) infliction of emotional distress.  With respect to defendant Atwater, against whom

7    the instant action is brought, plaintiff alleged all causes of action except negligent training, negligent

8    supervision and negligence of notary public and sureties.  Atwater never answered or otherwise

9    defended against plaintiff's complaint, and on July 24, 2006, the court entered a default against

10   Atwater.  <u>See</u> Docket No. 29.  Plaintiff obtained judgments against Coker, Fidelity and Pacific in

11   bankruptcy court, and plaintiff's claims against all defendants except Atwater were dismissed as of

12   March 3, 2009.  <u>See</u> Docket Nos. 77, 105, & 110.

13         Plaintiff now seeks a default judgment against Atwater, who has allegedly fled the

14   jurisdiction after being charged with arson.  Sanders Dec. ¶ 17.  Plaintiff seeks to recover the

15   following sums: (1) $307,070.69 in compensatory damages; (2) $25,000 in punitive damages; (3)

16   $16,175 that Atwater received as a result of a transaction he was not licensed to perform; and (4)

17   $43,813.98 in attorneys' fees and costs.

18

19   <u>LEGAL STANDARD</u>

20   <u>Entry of Default Judgment</u>

21         After entry of a default, a court may grant a default judgment on the merits of the case.  <u>See</u>

22   Fed. R. Civ. P. 55(b).  "The district court's decision whether to enter a default judgment is a

23   discretionary one."  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court

24   may consider in exercising that discretion include:

25         (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive
           claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the
26         action; (5) the possibility of a dispute concerning material facts; (6) whether the
           default was due to excusable neglect, and (7) the strong policy underlying the Federal
27         Rules of Civil Procedure favoring decisions on the merits.

28

1  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been entered

2  in this case, the court must take as true all factual allegations in plaintiff's complaint except for those

3  related to the amount of damages.  See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18

4  (9th Cir. 1987).

5

6  DISCUSSION

7  I.       Determining Whether to Grant Default Judgment

8          In this action, a default has already been entered against Atwater, and accordingly, under

9  Federal Rule of Civil Procedure 55(b) the court has the discretion to grant default judgment against

10  Atwater.  In exercising this discretion, the court may consider factors such as the possibility of

11  prejudice to the plaintiff, the merits of the substantive claim, the sufficiency of the complaint, the

12  amount of money at stake in the action, the possibility of a dispute over material facts, whether the

13  default was due to excusable neglect, and the strong policy favoring decisions on the merits.  Eitel,

14  782 F.2d at 1471-72.  In considering these factors, the court takes as true all factual allegations in

15  plaintiff's complaint, except for those allegations pertaining to damages.  TeleVideo, 826 F.3d at

16  917-18.

17          The court finds that an overall consideration of the factors supports granting default

18  judgment against Atwater.  Firstly, plaintiff will be prejudiced if default judgment is not entered.

19  Atwater's refusal to participate in settlement or mediation conferences or even acknowledge

20  plaintiff's complaint demonstrates that this judgment is the only means by which plaintiff can

21  establish Atwater's liability and recover damages for his losses.

22          Secondly, even under the heightened pleading requirement of Federal Rule of Civil

23  Procedure 9(b) that is required of allegations that sound in fraud, plaintiff's complaint is sufficiently

24  factually detailed as to the "who, what, when, where, and how" of Atwater's alleged conduct and the

25  resulting harms to plaintiff for the court to address whether the claims have substantive merit.  See

26  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  Additionally, as is required for claims

27  sounding in fraud, plaintiff has set forth facts regarding Atwater's conduct "from which an inference

28

United States District Court

For the Northern District of California

4

1    of scienter could be drawn."  See id. at 628, quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541,

2    1546 (9th Cir. 1994) (en banc).

3           Thirdly, the court is satisfied that plaintiff's claims against Atwater have substantive merit.

4    Because the claims are mainly grounded in fraud, in order to prevail plaintiff has to show (1)

5    misrepresentation (e.g. false representation, concealment or non-disclosure); (2) scienter, or

6    knowledge of falsity; (3) an intent to induce reliance; (4) justifiable reliance; and (5) resulting

7    damage.  Bank of the West v. Valley Nat. Bank of Ariz., 41 F.3d 471, 477 (9th Cir. 1994), quoting

8    Hackethal v. National Casualty Co., 189 Cal. App.3d 1102, 1111 (1987).  Taking plaintiff's

9    allegations as true, Atwater made false representations regarding his ability to secure loans for

10   plaintiff at a monthly payment not exceeding $1250 or to refinance higher loans to a lower monthly

11   payment.  Plaintiff has alleged enough facts for the court to infer that Atwater knew these

12   representations were false and that he intended to induce plaintiff to rely on these false

13   representations.  Finally, plaintiff did rely on these representations and suffered damages in the form

14   of higher mortgage payments and foreclosure on his house.

15          Fourthly, based on the information provided by plaintiff about the amount of money lost as a

16   result of Atwater's conduct, the court finds that the amount is substantial enough that it favors

17   granting plaintiff a remedy for recovering that sum.

18          Fifthly, there is no indication that there is any dispute over material facts.  Atwater has had

19   ample time to challenge plaintiff's allegations, and due to his failure to do so, the court takes all of

20   plaintiff's factual allegations as true, except for those relating to damages.  TeleVideo, 826 F.3d at

21   917-18.

22          Sixthly, this is not a situation where the default was due to excusable neglect.  Atwater has

23   not merely been late in responding to plaintiff's allegations, he has entirely failed to respond to the

24   allegations or participate in these proceedings since plaintiff filed his complaint in December 2005.

25   Accordingly, these factors all support the grant of default judgment.

26          Finally, the court is mindful of "the general rule that default judgments are ordinarily

27   disfavored" and that "[c]ases should be decided upon their merits whenever reasonably possible."

28   Eitel, 782 F.2d at 1472.  Here, however, it does not seem reasonably possible that the action can be

**United States District Court**
For the Northern District of California

5

1    decided upon its merits.  Plaintiff filed this action in December 2005, and in the more than three

2    years since the action was filed, Atwater has not answered or defended against the complaint or

3    otherwise made any contact with the court regarding this action.  Furthermore, plaintiff indicates that

4    Atwater has fled the jurisdiction.  Atwater's notable absence throughout these proceedings makes it

5    unlikely that the case against him can be decided on its merits.  Accordingly, the court finds it

6    appropriate to grant default judgment against defendant Atwater.

7    II.    Calculation of Damages

8         Having found that a default judgment should be granted for plaintiff against Atwater, the

9    court next turns to the issue of what relief to award plaintiff.  Although the court, where a default has

10   been entered, takes plaintiff's allegations as true for the purposes of determining whether to grant

11   entry of default judgment, it does not take plaintiff's allegations as true for the purpose of

12   calculating damages.  TeleVideo, 826 F.3d at 917-18.  The court may establish damages on default

13   via an evidentiary hearing, through detailed declarations or affidavits, or by reference to a magistrate

14   judge's knowledge of the record.  See, e.g., James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).  The

15   court finds that plaintiff has not submitted sufficient documentation and testimony regarding his

16   claimed damages for the court to determine the dollar amount that should be awarded.  Pursuant to

17   28 U.S.C. section 636(b)(1)(B) and (C) the court refers this matter to a magistrate judge to hold a

18   hearing on the issue of damages and to make findings of fact and recommendations regarding the

19   specific amounts that should be awarded for each requested form of relief.  At this hearing, plaintiff

20   will need to provide the magistrate judge with evidentiary support, such as documents, affidavits or

21   witness or expert testimony, corroborating plaintiff's claimed damages.  In the remainder of this

22   section, the court provides guidance to plaintiff and the magistrate judge regarding the different

23   types of damages that plaintiff has claimed.

24        A.    Compensatory Damages

25        "The law imposes on a real estate agent 'the same obligation of undivided service and loyalty

26   that it imposes on a trustee in favor of his beneficiary.'" Vasa N. Atlantic Ins. Co. v. Golden Eagle

27   Ins. Co., 1994 WL 285027, *8 (N.D. Cal. 1994) (Walker, J.), quoting Batson v Strehlow, 68 Cal. 2d

28   662, 674 (1968).  This relationship imposes upon the agent a duty of acting in the highest good faith

United States District Court
For the Northern District of California

6

1   and precludes the agent from obtaining any advantage over his principal in a transaction. Id. "[T]he

2   fraudulent breach of fiduciary duty is a tort, and the faithless fiduciary is obligated to make good the

3   full amount of the loss of which his breach of faith is a cause." Pepitone v. Russo, 64 Cal. App. 3d

4   685, 688 (1976). Where the defrauding party has a fiduciary relationship with the victim, the

5   measure of damages tends to "give the injured party the benefit of his bargain and insofar as possible

6   to place him in the same position he would have been had the promisor performed" his duty. Id. at

7   689. Compensatory damages may also be awarded for emotional distress that can be established by

8   testimony or inferred from the circumstances. Johnson v. Hale, 940 F.2d 1192, 1193 (9th Cir. 1991).

9        Plaintiff alleges, and the court takes as true, that Atwater breached his obligation and

10   fiduciary duty to plaintiff by engaging in a "bait and switch" scheme in which he represented to

11   plaintiff with knowing falsity that he would obtain for plaintiff a home loan with certain conditions.

12   Plaintiff seeks to recover compensatory damages for out-of-pocket damages incurred, for damage to

13   plaintiff's credit rating, and for emotional distress.

14        With respect to out-of-pocket damages, plaintiff asserts that his out-of-pocket damages

15   include the down payment on the house, mortgage payments, moving costs (both into and out of the

16   home), improvements and maintenance, homeowners fees, property taxes, property insurance and

17   medical bills relating to the emotional distress of plaintiff's experience. Sanders Dec. ¶¶ 22-23.

18   Many of these costs, such as move-in costs, improvements and maintenance, homeowners fees,

19   property taxes and property insurance, would have been incurred by plaintiff even if Atwater had not

20   acted fraudulently. However, it was Atwater's fraudulent conduct that resulted in plaintiff's

21   ultimately having to vacate his house and lose the benefit of these expenses that were incurred for

22   the house, and it should have been reasonably foreseeable to Atwater that plaintiff would be unable

23   to keep the house—and the benefits of the expenditures towards the house—with a mortgage having

24   substantially higher payments and less favorable terms and conditions than the mortgage Atwater

25   promised plaintiff. Additionally, Atwater should also be held liable for other costs that plaintiff

26   subsequently incurred as a result of having to vacate his home, such as the costs of moving into an

27   apartment. Therefore, the court finds it appropriate to award plaintiff all of these types of out-of-

28

United States District Court
For the Northern District of California

7

United States District Court

For the Northern District of California

1   pocket costs.  For the hearing before the magistrate judge, plaintiff should be prepared to provide

2   evidence documenting these out-of-pocket damages that he has incurred.

3            With respect to damage to credit rating, courts in California and the Ninth Circuit have stated

4   that damage to credit rating may be considered when awarding compensatory damages.  See, e.g.,

5   Anderson v. United Fin. Co., 666 F.2d 1274,1277 (9th Cir. 1982) (stating that damages can be

6   recovered for "injury to credit reputation"); Davis v. Local Union No. 11, Int'l Bhd. of Elec.

7   Workers, 16 Cal. App. 3d 686, 695-96 (1971) (same).  Here, plaintiff has provided testimony that his

8   credit rating has suffered as a result of the late mortgage payments and foreclosure, and that he has

9   been advised by credit counselors that this reduction in his credit rating will cost him approximately

10  $200,000 over his lifetime.  Sanders Dec. ¶ 21.  However, the court cannot simply take as true

11  plaintiff's allegations regarding damages, see TeleVideo, 826 F.3d at 917-18.  Therefore, for the

12  hearing before the magistrate judge, plaintiff should be prepared to provide evidence, such as

13  testimony or affidavits from credit counselors, establishing that the requested amount reflects

14  damages attributable to Atwater's fraudulent conduct.

15           With respect to plaintiff's request for emotional distress damages, the court finds it credible

16  from plaintiff's testimony and from the overall circumstances that plaintiff has suffered emotional

17  distress as a result of Atwater's conduct.  Therefore, at the hearing the magistrate judge should make

18  findings of fact regarding plaintiff's emotional distress and make recommendations regarding an

19  appropriate award.  Although plaintiff is not required to submit evidence of economic loss or

20  medical evidence of mental or physical symptoms stemming from the humiliation, see Johnson, 940

21  F.2d at 1193, he may provide this type of evidence if it is available.

22           Finally, the court notes that a payment that is made by one tortfeasor diminishes the claim

23  against a joint tortfeasor.  Seymour v. Summa Vista Cinema, 809 F.3d 1385, 1389 (9th Cir. 1987).

24  Here, plaintiff obtained judgments against defendants Coker, Fidelity and Pacific in bankruptcy

25  court, the terms of which were not provided to this court.  The general rule of compensatory

26  damages is that "a plaintiff is not entitled to more than a single recovery for each distinct item of

27  compensable damage supported by the evidence."  Theme Promotions, Inc. v. News Am. Mktg. FSI,

28  546 F.3d 991, 1005 (9th Cir. 2008), citing Tavaglione v. Billings, 4 Cal. 4th 1150, 1158-59 (1993).

United States District Court

For the Northern District of California

1    Accordingly, in determining the amount of compensatory damages that should be awarded plaintiff,

2    the magistrate judge should consider the extent to which plaintiff has or has not been made whole

3    already by the other defendants.  Accordingly, for the hearing before the magistrate judge, plaintiff

4    should be prepared to provide evidence of the amount of compensatory damages, if any, that has

5    already been awarded plaintiff in connection with other defendants in this case.

6            B.    Punitive Damages

7            Under California law, punitive damages are appropriate where "the defendant's acts are

8    reprehensible, fraudulent or in blatant violation of law or policy."  Tomaselli v. Transamerica Ins.

9    Co., 25 Cal. App. 4th 1269, 1287 (1994); see also Cal. Civ. Code § 3294(a).  For punitive damages

10   to be awarded, the plaintiff must establish by clear and convincing evidence that the defendant is

11   guilty of fraud, oppression or malice.  Henry v. Lehman Commercial Paper, Inc., 471 F.3d 977, 998

12   (9th Cir. 2006).  Courts in California have awarded punitive damages for fraudulent

13   misrepresentations by real estate brokers.  See, e.g., Wyatt v. Union Mortgage Co., 24 Cal. 3d 773,

14   790 (1979).

15           The court is satisfied that punitive damages are warranted in this case.  This is not a case

16   where the defendant merely acted negligently in breaching his fiduciary duty to plaintiff.  Rather,

17   plaintiff has alleged, and the court takes as true, that Atwater affirmatively represented to plaintiff

18   that he could secure a mortgage at certain terms and conditions.  After failing to secure this promised

19   mortgage, Atwater made further affirmative representations to plaintiff that he would be able to

20   refinance the loan to reduce the payments to the initially promised amount.  From Atwater's total

21   failure to deliver, his repeated misrepresentations, his failure to respond in any way to plaintiff's

22   complaints or to this law suit, and his finally absconding, the court can reasonably infer that he never

23   intended to make good on his promises to plaintiff.  Accordingly, the court finds that plaintiff has

24   established by clear and convincing evidence that he is entitled to punitive damages.  The magistrate

25   judge should consider and make recommendations on the amount of punitive damages that is

26   appropriate in this case.

27

28

9

**United States District Court**
For the Northern District of California

C.     Disgorgement Pursuant to California Unfair Business Practices Law

In California, it is "unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license." Cal. Bus. & Prof. Code § 10130.  A real estate broker is "a person who, for a compensation or in expectation for a compensation . . . [s]ells or offers to sell, buys or offers to buy, solicits prospective sellers or  purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange or real property or a business opportunity." Cal. Bus. & Prof. Code § 10131(a).  California's unfair competition law, which is codified at California Business and Professions Code section 17200 et seq. and which proscribes any unlawful business practice, "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal quotations omitted).  Accordingly, acting as real estate broker without a license is a violation of state business law that may be actionable under state unfair competition law.  Although unfair competition law does not provide for compensatory damages, it can provide a person with restitution of money that was once in that person's possession.  Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178 (2000); see also Cal. Bus. & Prof. Code § 17203.

Here, the court takes as true plaintiff's allegation that Atwater was not licensed to perform the real estate services provided to plaintiff.  Because Atwater's actions violated state business law, plaintiff may use state unfair competition law to disgorge Atwater of any money plaintiff paid him in connection with these unlawful business practices.  For the hearing before the magistrate judge, plaintiff should be prepared to provide evidence as to what money plaintiff paid Atwater in connection with Atwater's provision of real estate services.

As a final note on this issue, and for plaintiff's benefit, the court notes that the settlement statement that was provided to the court is insufficient evidence to establish the amount that plaintiff paid to Atwater.  Although plaintiff alleges that this statement shows that he paid $9875 to Pacific, line 702, which shows a commission that was paid to Pacific, indicates that this commission was paid from the seller's funds, not plaintiff's funds.  See Sanders Dec., Exh. 1 at 2.  Furthermore, although plaintiff alleges that he paid $6800 to Fidelity, the submitted material only reflects that

10

1   plaintiff paid Fidelity a loan origination fee, a processing fee, and a broker underwriting fee, totaling

2   $4100.  Id.  Finally, even if plaintiff can establish the amount he paid to Pacific and Fidelity, he must

3   also provide evidence corroborating his allegation that Atwater was paid all but $500 of this amount.

4

5       D.      Attorneys' Fees and Costs

6       Federal Rule of Civil Procedure 54(d) permits an award of costs other than attorneys' fees to

7   a prevailing party as a matter of course.  See Fed. R. Civ. Pro. 54(d)(1).  This district's Civil Local

8   Rule 54-1 sets out the procedures by which a prevailing party claiming costs must serve and file a

9   bill of costs, including attaching appropriate documentation to support each item claimed.  See N.D.

10  Cal. Civ. L.R. 54-1(a).  Federal Rule of Civil Procedure 54(d) also permits a party to file a motion

11  for attorneys' fees, specifying the statute or grounds entitling the movant to the award.  See Fed. R.

12  Civ. Pro. 54(d)(2)(B)(ii).  This district's Civil Local Rule 54 sets out the specific procedures for

13  requesting attorneys' fees, including providing a statement of the services rendered by each person, a

14  summary of the time spent, a statement describing the manner in which time records were

15  maintained, a description of the relevant qualifications and experience, and a statement of the

16  customary hourly charges of each person.  See N.D. Cal. Civ. L.R. 54-6(b).

17      Plaintiff requests attorneys' fees and costs on the ground that a party is entitled to recover

18  attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 for enforcing an

19  existing right.  In this case plaintiff alleged a claim under RESPA in his complaint.  However, in his

20  motion for default judgment and supporting declaration he makes no mention of RESPA or any basis

21  for damages under RESPA, which does provide for recovery of costs and attorneys' fees.  Thus, he

22  is left solely with him claim for fees and costs under section 1021.5.

23      It is not clear to the court that section 1021.5 applies, as this section refers to "an important

24  right affecting the public interest."  See Cal. Code Civ. Proc. § 1021.5; see also Riverside Sheriffs'

25  Ass'n v. County of Riverside, 152 Cal. App. 4th 414, 422 (2007).  California courts have held that

26  there are three requirements that must be met to sustain an award of fees under this section: "(1) the

27  action resulted in the enforcement of an important right affecting the public interest; (2) a significant

28  benefit was conferred on the general public or a large class of persons; and (3) the necessity and

United States District Court

For the Northern District of California

11

United States District Court

For the Northern District of California

1  financial burden of private enforcement were such as to make the award appropriate." <u>DiPirro v</u>.

2  <u>Bondo Corp</u>., 163 Cal.App.4th 150, 197 (2007), <u>review denied</u> (Oct. 24, 2007).  Even if a public

3  right is vindicated and some public benefit accrues as a result of the litigation, if these are

4  "'coincidental' to the monetary or other personal gain realized by the party seeking fees" an award is

5  not justified under section 1021.5.  <u>Id</u>. at 199.  That is the situation here and, thus, the court finds

6  that plaintiff is not entitled to an award of attorneys' fees under section 1021.5.

7          Plaintiff, as a prevailing party, is entitled to recover costs and may present his evidence of

8  costs before the magistrate judge.

9

10  <u>CONCLUSION</u>

11          For the foregoing reasons, the court **GRANTS** plaintiff's motion for default judgment and

12  **REFERS** the matter to Magistrate Judge Maria Elena James pursuant to 28 U.S.C. section

13  636(b)(1)(B) and (C) for the purpose of conducting an evidentiary hearing and submitting a report

14  and recommendation on the amount of damages and costs to be awarded.

15          IT IS SO ORDERED.

16

17  Dated: May 4, 2009                                   _____

18                                                       MARILYN HALL PATEL
                                                         United States District Court Judge
19                                                       Northern District of California

20

21

22

23

24

25

26

27

28